AGUINALDO RIVERA, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rivera v. Commissioner
Docket No. 15633-85.
United States Tax Court
T.C. Memo 1988-497; 1988 Tax Ct. Memo LEXIS 526; 56 T.C.M. (CCH) 498; T.C.M. (RIA) 88497; October 17, 1988
Aquinaldo Rivera, Jr., pro se. Anne W. Durning, for the respondent HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Taxable Year Ended
Deficiency
December 31, 1980
$ 27,388.07
December 31, 1981
$ 85,017.54
After concessions, [1] the issues for decision are: (1) whether petitioner can deduct gambling losses for taxable years 1980 and 1981; and (2) whether petitioner was in the trade or business of gambling during *527 taxable years 1980 and 1981. FINDING OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Phoenix, Arizona, when he filed his petition in his case. Petitioner usually works as a cook or an automobile mechanic. During most of taxable year 1980, petitioner worked full time as cook for Piccadilly Cafeterias, Inc. During taxable year 1980, petitioner attended dog or horse races n 171 days. On 103 days during 1980, petitioner had winning tickets. On his 1980 Federal income tax return, petitioner reported gambling winnings of $ 58,496.20 and deducted gambling losses of $ 58,496.20. During taxable year 1980, petitioner had actual gambling winnings of at least 64,443. On his 1980 tax return, petitioner indicated that his occupation was "salesman and cook." During taxable year 1980, petitioner earned $ 7,527.20 *528 in wages. When petitioner originally filed his 1980 tax return, he did not compute or pay the alternative minimum tax; however, he did so later in response to a request from the Odgen Service Center. During taxable year 1981, petitioner attended dog or horse races on 261 days. On his 1981 Federal income tax return, petitioner reported gambling winnings of $ 157,816.00 and deducted gambling losses of $ 157,816.60. During taxable year 1981, petitioner had actual gambling winnings of at least $ 174,435. On his tax return for 1981, petitioner indicated that his occupation was "cook." During taxable year 1981, petitioner received $ 33.50 in wages, $ 217.32 as a refund of state income tax and $ 1,476 in unemployment compensation. During taxable year 1981, petitioner received a refund of $ 4,472.29 of his 1980 Federal income tax. Petitioner had winnings during taxable years 1980 and 1981 in amounts that were less than $ 600 for each win. Petitioner did not report any winnings of less than $ 600 each on either his 1980 or 1981 tax return. Petitioner did not keep any of his winning tickets. Petitioner lost some of his 1980 daily racing programs and threw some of them away a few years *529 after 1980. Petitioner threw away some of his 1981 daily racing programs a few years after 1981. On March 7, 1983, petitioner filed a Form 1040X for 1981, claiming a refund of $ 4,563. On March 14, 1983, petitioner filed a Form 1040X for 1980, claiming a refund of $ 541. On both Forms 1040X, petitioner treated his gambling activities as a trade or business. Respondent disallowed petitioner's claims for refund for both 1980 and 1981. After respondent examined petitioner's 1980 and 1981 tax returns, petitioner met with Acting Group Manager Lois Swider in August, 1983. Ms Swider's function was to attempt to resolve a disagreement which had arisen between the tax auditor and petitioner regarding his 1980 and 1981 returns. At the meeting with Ms. Swider in August, 1983, the only records produced by petitioner were pari-mutual wagering tickets. At this meeting, when Ms. Swider asked petitioner if he had any racing programs, he did not indicate that he had any. Furthermore, when Ms. Swider asked petitioner if he maintained any kind of log or diary, petitioner did not indicate that he had any such records. Finally, when Ms. Swider asked petitioner whether he had income other than *530 that reported on his forms W-2G, he did not respond directly. On November 17, 1984, petitioner provided to respondent 74 daily racing programs for the 171 race dates attended during 1980. On November 27, 1984, petitioner met with the Appeals Division and submitted a log book of his wagering activity for 1980. At trial, petitioner introduced into evidence a log book for 1980 that differed from the one submitted to the Appeals Division in that the log book offered a trial included the amounts of wagers placed on winning tickets. The statutory notice of deficiency in this case was issued on March 8, 1985. On June 20, 1985, petitioner provided respondent 103 daily racing programs for the 261 race dates petitioner attended during 1981. Petitioner submitted to respondent wagering tickets which approximately corroborate the amount shown as wagers in petitioner's wagering logs, based on a sample reviewed by respondent. The racing programs submitted by petitioner approximately corroborate the amounts entered in petitioner's wagering logs for the days to which they pertain, based on a sample reviewed by respondent. OPINION The first issue for our consideration is whether petitioner *531 is entitled to deductions for gambling losses for taxable years 1980 and 1981. Petitioner claimed deductions for gambling losses of $ 58,496.20 in taxable year 1980 and $ 157,816.60 in taxable year 1981. Respondent disallowed the entire amounts claimed by petitioner as gambling loss deductions for taxable years 1980 and 1981. Respondent's determinations are presumed correct, and petitioner bears the burden of proving that they are erroneous. Welch v. Helvering,290 U.S. 111, 115, (1933); Rule 142(a).[2]
Section 165(d) allows a deduction for losses from wagering transactions to the extent of gains from such transactions. Section 6001 requires every person liable for income tax to keep such records and comply with such rules and regulations as the Secretary prescribes. Section 1.6001-1(a), Income Tax Regs., requires that taxpayers keep records adequate to establish the amount of gross income and deductions. To meet this burden of *532 proof concerning the amount of gambling losses, a taxpayer must substantiate the amount of the gambling losses by adequate records. Donovan v. Commissioner,359 F.2d 64 (1st Cir. 1966), affg. a Memorandum Opinion of this Court. Petitioner testified that he had losses of $ 58,496.20 for tax year 1980 and $ 157,816.60 for tax year 1981. In support of his testimony, petitioner introduced into evidence two log books that he claimed he had compiled on a daily basis during tax years 1980 and 1981. However, the evidence suggests that these logs were not prepared on a daily basis. In August, 1983, after respondent had examined petitioner's 1980 and 1981 tax returns, petitioner met with respondent's agent, Lois Swider. The only records petitioner submitted to respondent at this time were wagering tickets. Petitioner did not indicate to respondent's agent that he had maintained log books of his wagering activities. Petitioner's failure to tell Ms. Swider that he had maintained logs suggests that the logs were not in existence in August of 1983. In November of 1984, petitioner submitted to respondent 74 daily racing programs for 1980 and a log book of petitioner's *533 wagering activities for 1980. Petitioner admitted that at some time after November of 1984, he altered his log book for 1980 by adding to the log the cost of his winning tickets for 1980. The revised 1980 log indicates that petitioner had winning tickets on 103 days. However, on November 17, 1984, he was only to produce 74 racing programs to submit to respondent. Petitioner testified that he compiled the log books from information which he had written on racing programs at the track. Petitioner did not save his winning tickets. Petitioner provided no explanation regarding the way he arrived at figures for the days for which he had no programs. Petitioner's failure to retain his racing programs and his failure to explain how he arrived at figures for days for which he had no programs case serious doubt on petitioner's claim that he compiled the log books on a day by day basis. Petitioner presented no evidence, other than his own self-serving testimony, that the log books were prepared on a daily basis. Petitioner has failed to convince this Court that he maintained his logs on a daily basis. Consequently, we have doubts concerning the credibility of the log books. Petitioner *534 presented no documentary evidence other than the logs to this Court concerning the amounts of his losses. Petitioner submitted to respondent racing programs for fewer than half of the days he spent at the race track. However, these racing programs were not introduced into evidence in this case. In the absence of sufficient evidence to corroborate the accuracy of the figures in petitioner's log books, we are not convinced that the log books adequately establish the amounts of deductible losses. We recognize that petitioner probably incurred some losses in the course of his gambling activities. However, we will not apply the rule of Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), in this case because the record in the case before us provides no satisfactory basis for estimating the amount of petitioner's losses. Donovan v. Commissioner,359 F.2d at 65; Schooler v. Commissioner,68 T.C. 867, 871 (1977). We emphasize that petitioner's dilemma is a result of his own failure to keep adequate records. Although respondent stipulated that the racing programs approximately corroborate the amounts entered in petitioner's wagering *535 logs for the days to which they pertain, we cannot estimate petitioner's losses using the racing programs because they were not introduced into evidence and the logs that were introduced into evidence do not indicate which days' amounts are corroborated by the racing programs submitted to respondent. Furthermore, we are persuaded that petitioner's logs were prepared after the first and in anticipation of his meeting with the Appeals Division. We also note that Ms. Swider, respondent's agent, flatly contradicted petitioner's assertion that he submitted records to corroborate the log entries at their August, 1983, meeting. Petitioner's testimony was rambling, vague, and equivocal. Ms. Swider's testimony was positive and direct to the point. We are convinced that Ms. Swider's testimony is accurate and that petitioner's is not. Accordingly, we hold that petitioner has failed to meet his burden of proof. Since we have found that petitioner has failed to meet his burden of proof on the issue of the deduction for gambling losses, we need not address the issue of whether petitioner was engaged in the trade or business of gambling. To reflect the foregoing, Decision will be entered *536 for the respondent.
Footnotes
1. Petitioner stipulated that he received additional gambling income of $ 1,304 in taxable year 1980. Petitioner also stipulated that $ 5,000 claimed as interest expense on his 1980 Federal income tax return is not properly deductible. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩